IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID CLARK, *et al.*,<br>        Plaintiffs,<br>   v.<br><br>DUKE UNIVERSITY, *et al.*,<br>        Defendants. | 1:16-CV-1044 |
| KATHI LUCAS, *et al.*,<br>        Plaintiffs,<br>   v.<br><br>DUKE UNIVERSITY,<br>        Defendant. | 1:18-CV-722 |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

These two class actions arose out of defendant Duke University's management of a retirement plan for its employees. After discovery and initial summary judgment briefing in the first matter, the parties reached a settlement, which the Court has approved. Class Counsel seek attorney's fees, reimbursement of expenses incurred in prosecuting these cases, and compensation for the class representatives from a common fund created from the ERISA class action settlement. The Court has reviewed Class Counsel's request and supporting evidence, as well as attorney's fees and class representative awards from similar cases. The attorney's fees and expenses sought here are reasonable and the compensation to class representatives are appropriate and consistent with other awards in similar ERISA matters. The Court will therefore grant the motion.

I.     **Background**

A detailed procedural history and description of the settlement agreement is set forth in a separate opinion granting final approval to the settlement, issued concomitantly with this Order. In sum, the parties have agreed to settle the plaintiffs' class action ERISA claims in two related matters, *Clark v. Duke University,* No. 1:16-CV-01044 and *Lucas v. Duke University*, No. 1:18-CV-00722. Plaintiffs' claims in both matters are based on alleged unreasonable recordkeeping expenses, breaches of duty of prudence, and prohibited transactions arising out of the defendants' management of the Duke University Faculty & Staff Retirement Plan. *See* Doc. 72;[1] Complaint, *Lucas*, No. 1:18-CV-00722, Doc. 1 (M.D.N.C. Aug. 20, 2018). The proposed settlement provides for a $10.65 million gross settlement fund as well as other non-monetary relief in exchange for, *inter alia*, a release of ERISA-related claims on behalf of over 58,000 class members. Doc. 149-2. The settlement also allows for an award of up to $3.55 million, or one-third of the common fund, in attorney's fees, $825,000 in attorney's expenses, and case contribution awards of up to $25,000 for named plaintiffs in *Clark* and $30,000 for named plaintiffs in both *Clark* and *Lucas*, who are also appointed class representatives for their respective classes. *See id.* at pp. 2–3 ¶¶ 2.3, 2.13.

Consistent with these provisions, Class Counsel requests $3,550,000 in attorney's fees, reimbursement of $822,212 in litigation-advanced expenses, and case contribution awards of $25,000 each for *Clark* named plaintiffs David Clark and Thomas C. Mehen,

---

[1] All "Doc." references are to the *Clark* docket, No. 1:16-CV-01044, unless otherwise noted.

and $30,000 each for *Clark/Lucas* named plaintiffs Kathi Lucas, Jorge Lopez, and Keith A. Feather. Doc. 159 at 1. At the fairness hearing, Class Counsel confirmed that these payments in addition to administrative costs will result in a net settlement amount of approximately $5.97 million for distribution to class members.

The Court ordered the appointed Settlement Administrator, Analytics, to notify class members of the settlement and that Class Counsel would seek compensation from the settlement fund for the class representatives, attorney's fees, and costs. *See* Doc. 158 at 13–16. The Court also permitted any class member to file objections with the Court no later than thirty calendar days before the fairness hearing scheduled for June 18, 2019. *See id.* at 6, 16–17. The project manager at Analytics affirms that notice was mailed or emailed to all 58,594 class members and published on a settlement website, with only a relatively small number returned undeliverable. Doc. 163-3 at ¶¶ 5–6, 8. This notice included information about the request for attorney's fees and how class members could object. *See id.* at 17, 20.

The motion for attorney's fees has been on the docket since April 19, 2019. Doc. 159. No class member filed objections to the settlement or proposed attorney's fees, expenses, or class representative awards. The defendants have not opposed the motion.

II. **Attorney's Fees**

A. **Legal Standard**

In a class action, a court may award reasonable attorney's fees and nontaxable costs as authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). In a common fund case such as this, "a reasonable fee is based on a percentage of the fund

3

bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). District courts in the Fourth Circuit prefer the percentage method in common-fund cases, including ERISA cases, *see Sims v. BB&T Corp.*, No. 15CV732, 2019 WL 1993519, at *1 (M.D.N.C. May 6, 2019); *Kruger v. Novant Health, Inc.*, No 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007), and "the vast majority of courts of appeals now permit or direct district courts to use" this method. Manual for Complex Litigation § 14.121 (4th ed. May 2019); *id.* at n.483, n.484 (collecting cases).

To determine the reasonableness of the fee award, courts begin by considering the twelve factors identified in *Barber v. Kimbrell's, Inc.*: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases." 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)).

Courts also conduct a lodestar cross-check that compares the requested contingent fee award against a fee calculated based on hours spent at prevailing market rates. *See Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 462 (D. Md. 2014). "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Id.* at 467. Courts often use the lodestar method to cross-check the reasonableness of a percentage fee. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 759–60 (S.D.W. Va. 2009) (collecting cases). To determine the lodestar, courts multiply the reasonable hourly rate for each attorney by the number of hours reasonably expended. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). When the lodestar method is used only as a cross-check, however, courts need not "exhaustively scrutinize" the hours documented by counsel and "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). A reasonable rate is usually calculated by looking at the local market, *see Burrs v. United Techs. Corp*, No. 1:18CV491, 2019 WL 1430258, at *1 (M.D.N.C. Mar. 29, 2019), but a national market rate is appropriate for matters involving complex issues requiring specialized expertise, such as ERISA class actions. *See Kruger*, 2016 WL 6769066, at *4.

### B. Analysis

Class Counsel's request for a fee of $3,550,000, reflecting one-third of the monetary recovery provided to class members in the settlement agreement, is reasonable following consideration of the twelve *Barber* factors. Class counsel spent over 7,841.60

attorney hours and 661.30 hours of non-attorney time in this matter, a significant investment of labor and resources. *See* Doc. 160-2 at ¶ 3; Doc. 160-3 at ¶ 7. ERISA litigation is a "rapidly evolving and demanding area of the law," *In re Wachovia Corp ERISA Litig.*, No. 3:09cv262, 2011 WL 5037183, at *4 (W.D.N.C. Oct. 24, 2011), and excessive fee 403(b) cases are particularly novel as the first trial for this type of matter was just last year. *See* Doc. 160-1 at ¶ 20 (describing *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018)). That trial resulted in a judgment against the plaintiffs. *Sacerdote*, 328 F. Supp. 3d at 273. This, along with several dismissals or summary judgment rulings against plaintiffs in similar matters,[2] tends to show that these cases require a high level of skill on behalf of plaintiffs to achieve any recovery. *See* Doc. 160-4 at ¶ 10 (Sturdevant decl. noting that a practice in ERISA class actions is "complex, highly specialized, time-consuming, and expensive to pursue"); *Kruger*, 2016 WL 6769066, at *4 (noting the "significant risk of nonpayment" in ERISA matters generally).

Class Counsel credibly testified that the significant time spent on this matter has "impacted the firm's ability to handle other class actions or pursue other less risky matters," Doc. 160-1 at ¶ 36, and thus has come at some opportunity cost. A one-third fee is consistent with the market rate in complex ERISA matters such as this and reflects a customary fee for like work. *See Kruger*, 2016 WL 6769066, at *2 (collecting cases). Class Counsel has also credibly testified that it expected cases like these to be "extremely

---

[2] *See, e.g., Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Divane v. Nw. Univ.*, No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018).

hard fought and well-defended," which this case was, and which has required counsel to finance the case for years at substantial expense. Doc. 160-1 at ¶¶ 32–33.

Class Counsel negotiated a settlement that includes monetary relief of $10.65 million. As discussed in more detail in the Court's order approving the settlement, this is a relatively small percentage of the total monetary damages sought by the classes. *See* Doc. 121-5 at 65 n.225 (estimating at least $44.8 million in recordkeeping damages); *id.* at ¶¶ 9, 80, 99, 105, 112 (estimating damages of $6.1, $34.3, and $228.2 million across the Plan's Tier 1, 2, and 3 funds, respectively); Doc. 156 at 12 n.7 (estimating damages in *Lucas* of $1.6 million). However, this amount is significant and reasonable given the settlement's non-monetary relief [3] and other benefits to class members that contribute to significant future monetary value, *see* Doc. 160 at 13; Doc. 160-5 at ¶¶ 16, 22, and in light of the obstacles to obtaining a timely final judgment in favor of class members.

This Court has recently recognized the experience, reputation, and ability of Class Counsel, as have other district courts. *See Sims*, 2019 WL 1993519, at *2 (collecting cases). Class Counsel has demonstrated diligence, skill, and determination in this matter and, more generally, in an area of law in which few attorneys and law firms are willing or capable of practicing. *See* Doc. 160-4 at ¶ 10. Finally, Class Counsel did not have a professional relationship with any of the named plaintiffs before this lawsuit. Doc. 160-1 at ¶ 31. Overall, the *Barber* factors indicate this request for attorney's fees is reasonable.

---

[3] The settlement agreement requires non-monetary relief such as plan reforms, increased communication to plan members, and engaging an independent consultant to recommend whether to enlist new recordkeepers at the end of the settlement period. *See* Doc. 149-2 at ¶¶ 10.1–10.4, 10.8–10.9.

The lodestar cross-check also supports granting the motion for attorney's fees here. Class Counsel has submitted evidence that they spent 7,841.60 attorney hours and 661.30 hours of non-attorney time in this matter, s*ee* Doc. 160-2 at ¶ 3, including a breakdown of hours by overall stage in the litigation and hours per day. *See* Doc. 160-3 at ¶ 7, pp. 12–38. These hours are reasonable given the procedural history of this matter and the vigorous defense by Duke, which filed a motion to dismiss, Doc. 34, opposed class certification, Doc. 74, opposed the addition in *Clark* of the claims eventually brought in *Lucas*, Doc. 104, and filed a motion for summary judgment that was outstanding at the time of settlement. Doc. 138.

In another recent ERISA matter, the Court approved the same hourly rates suggested by Class Counsel here as appropriate lodestar rates after finding they reflect a reasonable national hourly rate. *See Sims*, 2019 WL 1993519, at *3 (approving hourly rates of $1,060 per hour for attorneys with over 25 years of experience, $900 per hour for attorneys with 15 to 24 years of experience, $650 per hour for attorneys with 5 to 14 years of experience, $490 per hour for attorneys with 2–4 years of experience, and $330 per hour for attorneys with less than 2 years of experience, law clerks, and paralegals); Doc. 160-3 at ¶ 6 (applying same rates to calculate lodestar amount).

Using these hours and rates, the lodestar amounts to almost $5.7 million. Doc. 160-3 at ¶ 6. This is over $1 million more than the fee request and reflects a multiplier below the typical range for similar class actions. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (noting that the lodestar multipliers "on large and complicated class actions have ranged from at least 2.26 to 4.5"). The lodestar cross-

check confirms that the requested attorney's fees are more than reasonable, and the motion as to the attorney's fees will be granted.

### III. Attorney's Expenses

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). A cost award is authorized by both the parties' settlement agreement, *see* Doc. 149-2 at pp. 2–3 ¶ 2.3, p. 19 ¶ 7.1, and the common fund doctrine. *See Kruger*, 2016 WL 6769066 at *6. "Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine." *Savani v. URS Prof'l Solutions LLC*, 121 F.Supp.3d 564, 576 (D.S.C. 2015). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Krispy Kreme*, 2007 WL 119157, at *3 (internal quotation omitted). Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and computerized legal research. *See* Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed. May 2019); *Phillips*, 2016 WL 2636289, at *9; *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016).

Here, Class Counsel has submitted evidence in support of their request for reimbursement of expenses in the amount of $822,212. *See* Doc. 160-2 at ¶ 2. Approximately 80% of these expenses are related to plaintiffs' expert witnesses. *Id.* These expenses are reasonable in light of the reliance other district courts in similar ERISA excessive fee litigation have placed on expert testimony and the complex nature of ERISA litigation. *See, e.g., Sacerdote*, 328 F. Supp. 3d at 305 (discussing expert testimony). The expenses incurred for plaintiffs' experts are also consistent with similar

excessive fee cases that were litigated for years before settlement. *See, e.g.*, Affidavit, *Spano v. Boeing Co.*, No. 3:06-cv-00743, Doc. 562-4 at ¶ 3 (S.D. Ill. Jan. 29, 2016) ($1.3 million in expert fees); Affidavit, *Abbott v. Lockheed Martin Corp.*, No. 3:06-cv-00701-MJR-DGW, Doc. 502-4 ¶ 3 (S.D. Ill. May 18, 2015) ($1.1 million in expert fees).

The total costs incurred are also less than those in similar ERISA actions. *See Spano*, 2016 WL 3791123, at *1, *4 ($1.8 million); *Abbott v. Lockheed Martin Corp.*, No. 3:06-cv-00701-MJR-DGW, 2015 WL 4398475, at *1, *4 (S.D. Ill. July 17, 2015) ($1.6 million); *Beesley v. Int'l Paper Co.*, No. 3:06–cv–703–DRH–CJP, 2014 WL 375432 at *1, 3 (S.D. Ill. Jan. 31, 2014) ($1.6 million); *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB, 2017 WL 9614818, at *6 (C.D. Cal. Oct. 24, 2017) ($1.2 million); *George v. Kraft Foods Global, Inc.*, Nos. 1:08-cv-3799; 1:07-cv-1713, 2012 WL 13089487, at *1, *4 (N.D. Ill. June 26, 2012) ($1.5 million).

The Court has reviewed the expenses and finds them reasonable. The motion will be granted.

### IV. Class Representative Awards

At the end of a successful class action, it is common for trial courts to compensate class representatives for the time and effort they invested to benefit the class. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Krispy Kreme*, 2007 WL 119157, at *4. "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts." *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015).

Class Counsel requests a case contribution award of $25,000 each for *Clark* named plaintiffs David Clark and Thomas C. Mehen and $30,000 each for *Clark* and *Lucas* named plaintiffs Kathi Lucas, Jorge Lopez, and Keith A. Feather. Doc. 159 at 1. The named plaintiffs provided initial information, Doc. 160-1 at ¶ 25, and later were deposed. Doc. 160-3 at ¶ 22. The Court recalls that there was always at least one class representative at each court hearing in this matter. The requested awards are consistent with awards in similar ERISA settlements. *See, e.g.*, *Kruger*, 2016 WL 6769066, at *6 (approving service award of $25,000 to seven class representatives); *Abbott*, 2015 WL 4398475, at *4 (approving incentive awards of $25,000 for six class representatives); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781, 2015 WL 4246879, at *3 (D. Minn. July 13, 2015) (approving incentive awards of $25,000 for five named plaintiffs). This aspect of the motion will also be granted.

V. **CONCLUSION**

Class Counsel's uncontested motion for attorney's fees, attorneys' expenses, and service awards for the named plaintiffs is well-supported and reasonable. Accordingly, it is **ORDERED** that:

1. Class Counsel's motion for attorney's fees, reimbursement of expenses, and case contribution awards for named plaintiffs, Doc. 159, is **GRANTED**.

2. Class Counsel is entitled to an attorney's fee of $3,550,000, to be paid from the settlement amount.

3. Class Counsel shall be reimbursed for expenses of $822,212, to be paid from the settlement amount.

4. A case contribution award of $25,000 each shall be paid to the *Clark* named plaintiffs David Clark and Thomas Mehen and a case contribution award of $30,000 each shall be paid to the *Clark/Lucas* named plaintiffs Kathi Lucas, Jorge Lopez, and Keith A. Feather, all to be paid from the settlement amount.

This the 24th day of June, 2019.

_____
UNITED STATES DISTRICT JUDGE